UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KILEY RUSSELL and TERRENCE RUSSELL, | |
| Plaintiffs, | Case No. 15-cv-7380 |
| v. | |
| USAA GENERAL INDEMNITY CO., | Judge John Robert Blakey |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

This case arises out of a dispute over insurance coverage. Plaintiffs Kiley and Terrence Russell sued Defendant USAA General Indemnity Co. in state court for breach of contract and bad faith after USAA denied the Russells' claim for personal property allegedly destroyed by a fire at their home or lost during a subsequent theft. [5]. USAA removed the case to this district and counterclaimed for fraudulent misrepresentation, alleging that the Russells made false statements during the application process that would have made them ineligible for coverage. [63]. USAA moved for summary judgment on its counterclaim and two other legal issues. [83]. For the reasons explained below, this Court partially grants and partially denies the motion.

I. **Background**

The facts come from USAA's Local Rule 56.1 statement of facts [85], the Russells' response to USAA's facts [90], and the Russells' additional facts [90].

1

### A. Motion to Strike

In its response to the Russells' additional facts, USAA moved to strike those facts for failing to comply with Local Rule 56.1. [93] at 1–2. This Court has broad discretion to enforce the local rules governing summary judgment motions. *See Boss v. Castro*, 816 F.3d 910, 914 (7th Cir. 2016). Local Rule 56.1(b)(3)(C) requires that the non-moving party file any additional facts as a separate statement with "short numbered paragraphs." The Russells plainly violated this rule by burying their additional facts within the lengthy paragraphs of their response brief.

That said, the local rules serve to assist courts "in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). Accordingly, in the interest of justice and efficiency, this Court may exercise its discretion "in a more lenient direction" and overlook some transgressions of the rules. *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013); *see also Cardoso v. Cellco P'ship*, No. 13-c-2696, 2014 WL 6705282, at *3 (N.D. Ill. Nov. 26, 2014) (declining to strike statements of fact despite "egregious" noncompliance with Rule 56.1 so as to resolve summary judgment motion "expeditiously and on the merits"). Thus, this Court declines to strike the Russells' additional statements of fact. This Court notes, however, that it did not rely upon any of the purported facts that constitute improper legal argument or speculation.

### B. The Russells' Insurance Policies

USAA provides insurance, including auto and home insurance policies, to military personnel, military veterans, and their relatives. [85] ¶ 5. USAA does not,

however, serve veterans discharged for bad conduct; the company's bylaws prohibit it from offering or selling insurance products to veterans who were not honorably discharged. *Id.* ¶¶ 6, 39. Kiley first applied for USAA membership on Terrence's behalf in July 2012, obtaining an automobile policy. *Id.* ¶ 4. In 2013, Kiley applied for and obtained a USAA home policy in Terrence's name. *Id.* ¶ 56. Terrence never participated in the process of getting insurance policies from USAA. [93] ¶ 9.

Unbeknownst to USAA when it issued the Russells' policies, Terrence received a bad conduct discharge from the Army in 1993 for burglary and conspiracy to commit burglary. [85] ¶ 7. USAA did not learn about Terrence's bad conduct discharge until July 2016, during discovery for this case. *Id.* ¶ 63. USAA says that the Russells failed to disclose this information when they applied for coverage and failed to correct an eligibility confirmation notice listing Terrence as "honorably discharged," *id.* ¶¶ 8, 45–52, but the Russells say that USAA never asked about Terrence's discharge status during the application process,[1] [90] at 13. The Russells also testified that Kiley did not know about Terrence's bad conduct discharge until after this litigation began. *See* [85-10] at 10; *id.* at 11; [90-6] at 32.

In 2013, USAA issued a home policy to the Russells (under Terrence's name) with an effective term from August 24, 2013, through August 24, 2014. [85] ¶ 58. The policy expressly stated that it would cover a maximum of $10,000 for "tangible business property" at the Russells' residence, *id.* ¶ 62, and Kiley ran two businesses—a make-up company and a daycare—out of the Russells' home at this

---

[1] USAA maintains that it asks every applicant if they have honorably served in the military or if they are related to someone who honorably served, [85] ¶ 40, but it did not offer specific evidence that anyone asked Kiley this question during the application process.

3

time, *id.* ¶ 22. About three weeks after the policy took effect, a significant fire rendered the Russells' home uninhabitable. *Id.* ¶ 66. Kiley contacted USAA the same night to report the damage to her home and open a claim. *Id.* ¶ 69. Five days after the fire, Kiley opened another claim with USAA for personal property allegedly stolen from the home's garage. *Id.* ¶ 86.

In November 2013, the Russells submitted a sworn "Proof of Loss" to USAA containing an inventory of the personal and business property that the Russells claimed they lost in the fire and subsequent theft. *Id.* ¶ 90. The Russells later amended the Proof of Loss with purchase dates for their lost personal property. *Id.* ¶ 94. In total, the Russells claimed about $75,000 worth of lost business property and about $428,000 worth of lost personal property. *Id.* ¶¶ 90–92. The claim for personal property included nearly $150,000 worth of property purchased before 2011, and about $50,000 worth of property with no purchase date. *Id.* ¶ 96.

C.   **Bankruptcy Proceedings**

While investigating the Russells' claims, USAA learned that both Kiley and Terrence previously filed for bankruptcy. *Id.* ¶ 73. Terrence filed for bankruptcy in April 2010 and declared, under penalty of perjury, that he owned only $800 worth of personal property. *Id.* ¶¶ 74, 76. Kiley filed for bankruptcy in December 2010 and declared, under penalty of perjury, that she owned only $950 worth of personal property. *Id.* ¶¶ 77, 79. Both Kiley and Terrence told the bankruptcy court that, "taking into consideration their monthly income and expenses, they were operating at a loss of about $5,912.99 each month." *Id.* ¶ 82. The bankruptcy court

discharged Terrence's debts in July 2010 and Kiley's debts in April 2011. *Id.* ¶¶ 74, 77. Kiley told the USAA claims investigator who met with her the day after the fire that "there had been no significant purchases of personal property" since she and Terrence went through bankruptcy. *Id.* ¶ 71.

### D. USAA's Response to the Russells' Claims

After learning about the Russells' bankruptcy cases, USAA requested (and received) additional financial documentation from the Russells; USAA then turned the financial documents over to a third-party forensic financial analyst. *Id.* ¶ 98. The financial analyst concluded—based upon documents such as the Russells' tax returns, tax returns for Kiley's businesses, bankruptcy filings, and credit card statements—that Kiley and Terrence did not have enough income or credit card debt to have purchased "anywhere near the amount of items" that they claimed to have bought between their bankruptcy discharges and the fire. *Id.* ¶ 99. Accordingly, USAA sent the Russells a coverage letter in March 2014 explaining that it would cover the damage to their home, but would not cover their claims for personal property, given the discrepancies between their claims to USAA, their bankruptcy asset schedules, and their other financial documents. *Id.* ¶ 101.

## II. Legal Standard

Courts should grant summary judgment when the moving party shows that no genuine dispute exists as to any material fact and the evidence weighs so heavily in the moving party's favor that the moving party "must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also* Fed. R. Civ. P. 56.

5

A genuine dispute as to a material fact exists when, based upon the evidence, a reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 248. To show a genuine dispute as to a material fact, the non-moving party must point to "particular materials in the record," and cannot rely upon the pleadings or speculation. *Olendzki*, 765 F.3d at 746.

At summary judgment, courts must evaluate evidence in the light most favorable to the non-moving party and must refrain from making credibility determinations or weighing evidence. *Rasho v. Elyea*, 856 F.3d 469, 477 (7th Cir. 2017) (citing *Anderson*, 477 U.S. at 255). The moving party bears the burden of establishing the lack of genuine disputes as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### III. Analysis

USAA moved for summary judgment on its fraudulent-misrepresentation counterclaim. [83] at 1. USAA also asks this Court to apply judicial estoppel to bar the Russells from seeking reimbursement for personal property that they failed to disclose (or spectacularly undervalued) in previous bankruptcy proceedings, *id.* at 2, and to bar the Russells from seeking reimbursement for any tangible business property in excess of their policy's $10,000 limit, *id.*

#### A.  USAA's Counterclaim

To succeed on a claim for fraudulent misrepresentation under Illinois law, a plaintiff must prove the following five elements by clear and convincing evidence: (1) the defendant made a false statement of material fact; (2) the defendant knew or

believed that the statement was false; (3) the defendant intended to induce the plaintiff to act upon the statement; (4) the plaintiff justifiably acted in reliance upon the statement; and (5) the plaintiff suffered damage as a result. *See Schrager v. N. Cmty. Bank*, 767 N.E.2d 376, 381–82 (Ill. App. Ct. 2002); *Soules v. Gen. Motors Corp.*, 402 N.E.2d 599, 601 (Ill. 1980). The parties contest the second element.

Both sides agree that Terrence never participated in the process of acquiring insurance from USAA. *See* [93] ¶ 9. Thus, only Kiley could have made a fraudulent misrepresentation to USAA about Terrence's military discharge status. But both Kiley and Terrence testified that she did not know about his bad conduct discharge until after this litigation began. *See* [85-10] at 10 (The bad conduct discharge "didn't become a subject of conversation until after this claim."); *id.* at 11 (Q: "So it's now your understanding that your husband was discharged for bad conduct, correct?" A: "Yeah, *now*.") (emphasis added); [90-6] at 32 ("I definitely don't remember" having a conversation with Kiley to say, "Hey, I had this type of discharge . . . I didn't have that type of conversation."). On USAA's summary judgment motion, this Court must evaluate evidence in the light most favorable to the Russells and must refrain from making credibility determinations or weighing evidence. *Rasho*, 856 F.3d at 477. Under that standard, the Russells' testimony creates a genuine issue of material fact about whether Kiley knew (when she told USAA that Terrence had an honorable discharge or failed to correct the status listed in the eligibility confirmation notice) that she was making a false statement. *See Anderson*, 477 U.S. at 248.

USAA insists that Kiley's ignorance and Terrence's lack of involvement in the application process cannot protect the Russells because "Plaintiffs did in fact have a duty to make a complete and truthful disclosure of all relevant information when applying for USAA membership." [94] at 4 (citing *Liberty Mut. Ins. Co. v. Decking & Steel, Inc.*, 301 F. Supp. 2d 830, 835 (N.D. Ill. 2004)). But the cases that USAA cites for this proposition either address claims for negligent misrepresentation, *see, e.g.*, *Liberty Mut.*, 301 F. Supp. 2d at 835 (explaining that, for negligent misrepresentation claims, carelessness or negligence about a statement's falsity suffices because a plaintiff must also prove that the defendant had a duty to communicate accurate information), or for rescission under 215 ILCS 5/154, *see, e.g.*, *New Eng. Mut. Life Ins. Co. v. Bank of Ill. in DuPage*, 994 F. Supp. 970, 976 (N.D. Ill. 1998). USAA has not counterclaimed for negligent misrepresentation, and USAA cannot obtain rescission under section 5/154 because too much time has lapsed since the Russells' home policy went into effect. § 5/154 (A policy "shall not be rescinded after the policy has been in effect for one year or one policy term, whichever is less"). Thus, USAA's arguments about the Russells' duty to disclose do not support its claim for fraudulent misrepresentation, which depends upon Kiley's knowledge at the time she made any allegedly fraudulent statements.

Because a genuine issue of material fact exists regarding whether Kiley knew or believed that she made false statements about Terrence's military discharge status, USAA fails to meet its burden to prove fraudulent misrepresentation at this point in the proceedings.

8

## B. Judicial Estoppel

Judicial estoppel applies when litigants take a position in a judicial proceeding, benefit from that position, and then attempt to take (and benefit from) a contrary position in a later judicial proceeding. *State Farm Fire & Cas. Co. v. Watts Regulator Co.*, 63 N.E.3d 304, 309 (Ill. App. Ct. 2016). The doctrine protects "the integrity of the judicial process" by preventing parties from intentionally changing positions "according to the exigencies of the moment." *Id.* (citing *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)). Illinois courts generally require five elements to apply the doctrine: (1) a party took two positions; (2) factually inconsistent with one another; (3) in separate judicial or quasi-judicial proceedings; (4) with the intent that the trier of fact accept the positions as true; and (5) the party succeeded in the first proceeding and received some benefit. *Id.*

USAA shows all five of these elements with respect to the different valuations that the Russells provided, in multiple judicial proceedings, for their pre-bankruptcy personal property. First, the Russells took factually inconsistent positions in separate judicial proceedings. In their respective bankruptcy cases, they claimed a total of $1,450 worth of personal property, assuming that they claimed the same $300 worth of furniture. [85] ¶ 81. Here, the Russells want USAA to reimburse them for $148,979.90 worth of personal property that they allegedly acquired before their bankruptcy discharges[2] and lost in the fire. *Id.* ¶ 96.

---

[2] The Proof of Loss uses approximate purchase dates, *see* [85-12], making it technically possible that Terrence bought some of the pre-2011 property after the bankruptcy court discharged his debts in July 2010, but Kiley told a USAA claims investigator that "there had been no significant purchases of personal property" since she and Terrence went through bankruptcy, [85] ¶ 71.

9

The Russells also seek reimbursement for over $50,000 worth of personal property for which they did not provide a date of acquisition. *Id.* The Russells argue that the undated property should not factor into any assessment of their inconsistency because "these items may very well have been acquired after their bankruptcy." [90] at 8. True, but the items also "may very well have been acquired" *before* their bankruptcy. Regardless, the Russells now declare that, before their bankruptcy discharges, they had personal property worth at least 100 times more than the value that they declared to the bankruptcy court.

Second, the Russells clearly took their inconsistent positions with the intent that a trier of fact accept those positions as true. They want this Court to order USAA to pay for the personal property in question, *see generally* [5], and they wanted the bankruptcy court to discharge their debts given their apparent inability to pay, [85] ¶¶ 74, 77. Finally, the Russells benefited from their earlier contrary positions when the bankruptcy court discharged their debts. *Id.*

The Russells argue that judicial estoppel should not apply here because they simply did not think to give a value to certain items in their bankruptcy proceedings, or "did not appreciate the value of the items at the time of bankruptcy." [90] at 8. But the gap between the two valuations that the Russells provided "is so vast that it could not be attributable simply to different valuation methods for different purposes." *Bruegge v. Metro. Prop. & Cas. Ins. Co.*, No. 13-cv-1256-JPG-DGW, 2015 WL 738672, at *4 (S.D. Ill. Feb. 19, 2015). And allowing the Russells to receive payment on an insurance claim for property that they did not

10

disclose to the bankruptcy court would give them a windfall after they deprived their creditors of those assets in the bankruptcy proceedings. *See id.* Thus, judicial estoppel bars the Russells from claiming insurance benefits for assets that they either denied owning or severely undervalued in their bankruptcy petitions. *Id.; see also Ceres Terminals, Inc. v. Chi. City Bank & Trust Co.*, 635 N.E.2d 485, 495 (Ill. App. Ct. 1994). The Russells told the bankruptcy court that they had only $1,450 worth of personal property, and judicial estoppel binds them to that representation for any property they acquired prior to their bankruptcy discharges.

C. **Business Property Limit**

Although the Russells' USAA policy contained an explicit coverage limit of $10,000 for "tangible business property" located at the covered residence, [85] ¶ 62, the Russells say that USAA should reimburse them for upwards of $75,000 of business property because USAA knew that Kiley "was conducting at least a daycare operation in their home," [90] at 10. In other words, the Russells argue that USAA should have to fulfill their "reasonable expectations" of reimbursement, even though their expectations contradict the policy's express language. *Id.* USAA argues that it had no duty to ensure that the Russells chose adequate coverage, and that the $10,000 limit sets the outer boundary for any reimbursement related to tangible business property. [94] at 9–11. This Court agrees with USAA.

In Illinois, insureds "have the burden of knowing the contents of their insurance policies." *Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 858 (7th Cir. 1997) (citing *Nielsen v. United Servs. Auto. Ass'n*, 612 N.E.2d 526, 529 (Ill. App. Ct.

11

1993)). Insureds also bear "the primary responsibility" for determining their own insurance needs. *Id.* Indeed, an insurer has no duty to suggest full coverage "even when the insurer knows the coverage provided is inadequate." *Nielsen*, 612 N.E.2d at 529; *see also Cleary v. Country Mut. Ins. Co.*, 380 N.E.2d 525, 526 (Ill. App. Ct. 1978) (holding that neither contract law nor tort law imposes a duty upon an insurer "to advise and counsel its insured as to the need or advisability of increased insurance coverage").

Given that landscape, the Russells cannot obtain more than $10,000 from USAA in reimbursement for lost tangible business property, regardless of what USAA knew about Kiley's home businesses. The Russells' policy expressly stated that USAA would cover a maximum of $10,000 for tangible business property at their residence. [85] ¶ 62. The Russells had the burden of knowing that their policy contained the $10,000 limit, *see Nielsen*, 612 N.E.2d at 529, and USAA had no duty to inform the Russells that the policy they chose might not cover the full value of all tangible business property located at their home, *see id.* at 530; *Cleary*, 380 N.E.2d at 526. Also, the Russells offer no evidence that USAA ever indicated that its policy would cover more than $10,000 of business property.

Relying upon *Cummins v. Country Mutual Insurance Co.*, 687 N.E.2d 1021, 1030 (Ill. 1997), the Russells argue that the $10,000 policy limit should not apply because Kiley reasonably expected, based upon USAA's knowledge of her business, that USAA would cover all of her business property under the policy, [90] at 10. *Cummins* does not help the Russells; the plaintiff in that case reasonably expected

that his insurer would cover his damages from a car accident up to the full $50,000 limit of his policy, but not beyond that limit. 687 N.E.2d at 1027. In contrast, the Russells paid premiums for $10,000 of coverage, but they expect coverage for $75,000. *Cf. Hoglund v. State Farm Mut. Auto. Ins. Co.*, 592 N.E.2d 1031, 1035 (Ill. 1992) (The policyholder "paid a premium for $100,000 of uninsured motorist coverage and reasonably expected coverage for damages caused by an uninsured motorist up to that amount."). The Russells' expectation that USAA should cover far more than their policy's limit is unreasonable and finds no support in case law.

## IV. Conclusion

This Court partially grants and partially denies USAA's motion for summary judgment [83]. This Court denies the motion as to USAA's counterclaim for fraudulent misrepresentation, but grants it as to: (1) judicial estoppel barring the Russells from claiming reimbursement for more than $1,450 worth of personal property that they acquired before their bankruptcy discharges; and (2) holding that the tangible business property limit in the Russells' policy bars them from claiming reimbursement for more than $10,000 of such property. The motion hearing previously set for May 1, 2018 stands, but as a status hearing.

Dated: April 30, 2018

Entered:

_____
John Robert Blakey
United States District Judge